Thank you your honor, it's my pleasure. May it please the court. Counsel. Good morning. My name is David Fouch. I represent Mr. Deng, who appeals his conviction for being a drug user in possession of a firearm. Mr. Deng conceded that he has a drug problem. After returning from two tours in Iraq and frequently finding himself homeless, Mr. Deng struggled with addiction. The key factual dispute at trial was whether the government could prove that Mr. Deng knew he had the Smith & Wesson firearm in his car. One of the government's most important pieces of evidence was the post-Miranda exchange between law enforcement and Mr. Deng. As a refugee from Sudan, English is not Mr. Deng's first language. The government attempted to prove that Mr. Deng incriminated himself during the post-Miranda exchange with law enforcement. Mr. Deng sought to cast doubt on that exchange. And so that's the key piece of factual evidence. And it does tie into the Batson challenge that Mr. Deng had as well. So you will recall that there are two Batson challenges at issue in this appeal. The first one is with respect to juror number six, who is a Dominican woman who spoke Spanish and expressed that in her position, she deals with cross-cultural communication. There were people who worked at the manufacturing or maybe it was the food processing plant that she worked at. And she would have to find ways to communicate with them over a potential language barrier. As an immigrant and as a minority, she was struck by the government during its preemptive challenge and a Batson challenge was lodged. This was an interesting exchange and really shows you, I think, the ambiguity of trial practice. How when you're almost certain that you're communicating effectively with the judge, with opposing the transcript, it turns out no one was effectively communicating all that well. So the judge ultimately ruled that it was permissible for the government to strike juror number six because English was not her first language. But that's not what the transcript says. That was not evident from what juror number six said during voir dire. That also wasn't the government's proffered explanation for why they were striking her. The government's proffered explanation was that they were striking her because she had these skills in communicating across cultural barriers and that they thought that she would expect that in the exchange between Mr. Dang and law enforcement, that law enforcement should have shown him photos to be clear about what precisely they were talking about in terms of where the gun was in the vehicle, what kind of gun it was, and so forth. But that's also not what she said. She didn't say that she expected cross-cultural communication to involve showing photos or something of that nature. And so here we have really just kind of a mess. And we think it's an abuse of discretion for the district court judge to permit the striking of this particular  Well, this is beyond abuse of discretion, don't you think, counsel? The Supreme Court says clear air review, great deference. You know the kind of words the Supreme Court's used since the early 90s. Yes, Your Honor. I think it's fair to say that this is something more than abuse of discretion. It is fair to say that the district court has, I think, the words we see in the case laws that this court must give great deference to the district court. Now, where precisely that lands, I'm not sure. I don't think I can put any sort of mathematical figure on it. But I think it's fair to say that it's hard to give deference when there clearly was a breakdown of communication here, where the ruling is that, well, this juror has English as a second language, therefore it's a permissible strike, when that wasn't what the government said and it's not what the juror said. And so when we're trying to tie to the record where the deference is, I don't think that we can find that under the facts of this colloquy between judge, defense counsel, and government counsel. And it's important to look. This case takes place in the southern district of Iowa. There aren't very many minority jurors available, especially immigrants, African-Americans as my client was. And there's not just the striking of one Dominican woman who has the kind of experience that I think Batson teaches that we want to have in jurors, jurors who might understand the sorts of problems that a minority defendant who is going to struggle to communicate with law enforcement is going to have. So that's a concern in and of itself with the striking of juror number six. But then to see that it continues with an African-American juror who was also struck on the basis that... Well, if you look at these three or four pages of transcript, it does focus on English as a second language and how it's going to be a defense and all that. So do you really think that there's any objection to what the trial court did under that kind of standard of review? So I think there is, Your Honor. And I want to go to the very purpose that we have Batson in the first place. It's an equal protection issue. And the thing that we are trying to protect is we're trying to protect minority defendants who have an enormously different experience with the criminal justice system, with law enforcement, with the community than people who are not minorities experience. And I think one thing that we're seeing here... It may be in its origin, but it protects majority defendants and any kind of defendant. Sure. Sure. But it's worth, in this court's analysis, I believe, looking to the purpose of Batson and asking ourselves if we're really upholding it here. And when we say, well, look, it's okay to strike this juror because this juror deals with people of a different background and we're not so comfortable with that. Well, that seems to be the run contrary to the purpose... How about juror 15? Your time's going away. Yes. So, I'm happy to address other questions. I was going to save this for rebuttal, but I'll get to the hearsay issue now since I haven't had the opportunity to do that yet if it's with the court's indulgence. Well, I think you better address anything you intend to in your argument up front, not save it for rebuttal. Then I will. And I think... Well, I've got a question, if I can, about juror 15. It seemed to me that, as I read the transcript, that the court misstated something that that juror said. The court said that the juror couldn't remember the location of the previous trial. When you could look at the transcript, the juror said it was in Okaloosa County. Right, Your Honor. This, I think, goes again to the question of how much discretion do you give when we are clearly, in the heat of trial, not appropriately communicating about or remembering what, in fact, was said. And I think it's important to remember that, under the circumstances here, a criminal defendant in this position, so there's an issue here about whether or not a prima facie case was made for this particular defendant. And we're having a back and forth in chambers, outside of the presence of the jury, obviously. And, you know, you can kind of, you've got to kind of look the judge in the eye and say, okay, well, does the judge think I've made a prima facie case here? And they turn to the opposing party. And the parties are all trying to remember precisely what happened out there without the benefit of a live transcript, necessarily. And so I think it becomes really important that if a judge is going to rely heavily on their recollection of what was said, that it needs to be precise. Well, notwithstanding the apparent error that the district court made about not remembering anything, didn't Juror 15, in fact, remember fewer details than others? Yes, Your Honor. There's no question about that. However, I don't think the mere fact that Juror 15, who remembers less than others, is in itself a sufficient reason to overcome the situation we have here, which is... And do you also agree 15 remembered less than 20? I think that's fair to say, although to a certain degree, we're splitting hairs about how precisely good the memory was. You know, was it a trial 10 years ago, 20 years ago? It's really quite hard to say. And I don't think a terribly probative question about whether a case settled is different, too. Sure it is, of course, Your Honor. With a minute left here, I'll address the hearsay question because I think it is quite important. The hearsay at issue here is effectively a question and answer session between law enforcement and Mr. Ding where they don't communicate effectively. And I think the real problem here is that the law enforcement agent on direct examination says that we agree that we were talking about the same gun that was in the car. And so we attempted to introduce a question and answer session where my client was asking questions of law enforcement about where the gun was located, what kind of gun was it, and so forth. And he wasn't permitted to put those into evidence. Those aren't hearsay because these are not statements being offered for the truth of the matter asserted. And it effectively communicated with the defendant to get what they believed to be a confession about the gun in the car. And strangely enough, this sort of goes back to the problem we have with Juror No. 6, right, where we're having a problem with cross-cultural communication, and we aren't able to get to the truth of that, and we also aren't allowed to have a juror who really would have understood that sort of thing. With that, Your Honor, thank you for your time. Mr. Fauci, I'll allow you a minute in rebuttal. Thanks, Your Honor. If there's something you really need to respond to. May it please the Court. Shea Gonzales for the United States. I'll start with the Batson issue. Batson is not as amorphous as a posting counsel would suggest. It is to protect individuals who belong to a protected class from discrimination on the basis of that class. And there is a three-part analysis that the District Court employs to determine if the party challenging the strike meets their burden to show that strike was exercised on the basis of race in this case. And starting with Juror No. 6, opposing counsel failed to make out a prima facie case of discrimination at trial. As this Court most recently touched on in Young, reiterating in that case that a prima facie case requires the challenging party to point to facts and circumstances that support an inference of discrimination, like a pattern of strikes, the prosecutor's statements during voir dire, the fact that a similarly situated juror was chosen over a struck juror. We did not have that here with Juror No. 6. It was simply pointed to the fact that she was a Dominican and she was an immigrant. So opposing counsel failed to make at that first step to make out that prima facie case. Have we ever upheld a Batson challenge on, I guess, the government's defense of a Batson challenge on the prima facie case? I believe so, Your Honor, and it has been addressed. I know we say it over and over, I just am not aware of a case where we've actually said no prima facie case was established and that's the end of it. I believe the cases that I have touched on, they get to the race-neutral reason and perhaps pretext as I've shown. Yeah, it's interesting. We just say it over and over, but I don't think there's ever been one where we've done it on that basis. That's correct, Your Honor, but you can and you should. I understand. You'd like us to. But even so, another case in this court, United States v. Young Bay, 893 F. 2nd. 178, also says that the opposing counsel must point to more than just the bare fact that a juror of a certain race has been struck. Again, that's all we had here. Even if this court, though this court can and should affirm on the basis of a failure to make out that prima facie case. In step two, a race-neutral reason was given by the government. The government, and as you'll recall, during voir dire, defense counsel asked questions to veneer persons about their experience working with and communicating with persons who are non-native English speakers. Number six, so different individuals acknowledge they use photos, visuals, this was a part of the job as a payroll clerk, that she speaks Spanish, but oftentimes there's a struggle with the Spanish that she speaks as a Dominican and whereas somebody from Mexico might speak, use different words. She touched on using translations, communicating with non-native English speakers in her job. The government, and it's providing a race-neutral reason, which is an incredibly low standard. The government recalled those questions about translating and expressed, and the government did have a misrecollection about her saying that she used photos and visuals, but she did speak about translating in her job. The government expressed a concern about a bias that could be created by her experiences having to do that because the government suspected that defense counsel would argue that there was a mistranslation or miscommunication between Mr. Dang and the law enforcement officers who were interviewing him. And employment bias or bias created through your employment is a valid race-neutral reason that this court has found in the United States versus Maxwell. So at that race-neutral reason, the burden shifts back to defense counsel to show that that reason is pretext for discrimination. There was no attempt to show that was pretext for discrimination. Defense counsel mistakenly said that the government failed to make a prima facie case. And additionally, they made no attempt to show pretext and affirmed the concerns the government had about defense counsel making an argument that there was a miscommunication. Now, when there is a facially neutral reason, those are upheld when there's no attempt to show pretext, and that was dealt with in Young as well. And speaking about how rulings on bats and challenges are for clear error, that is because the district court is judging the prosecutor's credibility by their demeanor, by how reasonable their answer is about whether or not it is rooted in trial strategy. But how about Juror 15? Thank you. Yes, moving on to Juror 15, I noted earlier the court's questions about the very fine distinctions. And this court has held that similarly situated jurors do not have to be the exact same, but fine distinctions are upheld. And this is a fine distinction, but it is one that separates the Juror 15 from Juror No. 20. Now, notably, opposing counsel didn't point to you Juror No. 20 during... How about the district court's mistaken statement that Juror 15 didn't recall where the jury service was? Your Honor, that does not overcome the court's decision to credit the prosecutor's race-neutral reason here. Though the court had a misrecollection about the differences, the distinction still existed. And this is just one additional minor distinction that the court need not have parsed exactly to credit the prosecutor's race-neutral reason here and to find that defense, that the defense had failed to carry its ultimate burden of persuasion. If you take, if you delete the error on the remembering the location, what are you, what's the distinction that we're left with? So the distinction here is he remembered the least. So one remembered that the case settled and the other couldn't remember anything? Anything, whether it was civil, criminal, state, federal, the, I would note that... For one, the only thing he remembers is it settled. The other remembers nothing. She also remembered the location. Well, they both remembered the location. Yeah. And so I think... I know we talk about fine distinctions, but that seems to me kind of ultra-fine. Ultra-fine, but fine distinctions are still upheld and the court still credited the prosecutor's reasons and bases that decision on a determination of credibility that is measured by the prosecutor's demeanor at that time, whether it's rooted in trial strategy, whether or not she believes that the government did not strike this person on the basis of race. And it was opposing counsel's burden of persuasion to prove that the government did so and did not ultimately carry that burden here. I would also note that the government provided an additional reason that the juror number 15's reasons were, his answers were short and vague. The court ultimately did not touch on those reasons in making the determination. Ms. Gonzalez, I'd like to hear your response to the hearsay argument as well. Yes, Your Honor. The court properly excluded the defendant from introducing his own exculpatory statements, properly excluded first and foremost under Rule 106, because they were not necessary to complete or explain any portion of the testimony the government provided, which was five clips from that audio interview. Then, the detective who interviewed the defendant testified on direct examination about that interview and walked through this exchange about the location of the gun in the car, step by step. Then, as defense counsel attempted to get the audio portion and to set, to get those statements in, the government, excuse me, the court denied it as hearsay and rightfully so. It was an attempt to get prior exculpatory statements that are just merely consistent with his pleas of not guilty in. It was, he needed it for substantive reasons to argue. In the end, that was not my gun. And considering all of the evidence throughout this trial, that is what he would have required to make that argument. I see I'm out of time, unless the court has any questions. Hearing none, thank you. Thank you for the additional time. I'll respond quickly on the hearsay question. The hearsay that was excluded, sua sponte by the judge, is, quote, my client saying, is that where you say they found the gun at? Question, you know what I'm saying. Question, underneath the counsel? Question, so underneath the driver's seat or where? Like the shit? That's the counsel, right? Where you pull the thing out and where you found the weed at? More forward? Question mark? That's it. So it's hard to say that those are being offered for the truth of the matter asserted, but what really matters here is the officer got up there and said, I agreed with this defendant about where the gun was in the car, and we had an agreement to my perception that we were talking about the same gun in the same location in the car. That was the conclusion of the officer's testimony, and so we offered this evidence to say, no, you didn't have an agreement about that, and that a reasonable law enforcement officer, under the circumstances, would have said, okay, well, we don't have an agreement about this. Maybe we should have this thing fingerprinted, DNA tested, checked into in some greater level than what we actually did. You, in fact, didn't have, would have been the cross-examination to the law enforcement officer. You, in fact, didn't have an agreement, and that's what this evidence would have been for. Were you able to cross-examine about that, even without putting the statements themselves in evidence? Couldn't you have asked questions about, you know, any confusion that was going back and forth at the time? Sure. I certainly had the opportunity to cross-examine him. I did, but there's two entirely different kinds of cross-examination. The ones where I'm asking questions without evidence, and the ones where I'm asking questions with evidence, and we know which one is by far the most effective. Yeah, I just kind of wonder if you couldn't have said, well, didn't my client say X and such in response to your question or something? Well, I think that encompasses the same hearsay that the court excluded. The court probably wouldn't let you get away with that. If I would have said, quote, my client said to you, is that where you found the gun at, question mark, it would have been the exact same thing as was it excluded. With that, I see that my time is over, Your Honor. Very well. Thank you.